**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

OLIVER CIRIC, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AL JAZEERA MEDIA NETWORK,

Defendant.

Civil Action No. 1:26-cv-11751-WGY

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**DLA PIPER LLP (US)**

Eric Christofferson (BBO No. 654087)
Michael Walsh (BBO No. 683716)
33 Arch Street, 26th Floor
Boston, MA 02110
eric.christofferson@us.dlapiper.com
michael.walsh@us.dlapiper.com
Tel: (617) 406-6000
Fax: (617) 406-6100

Kevin Walsh (*admitted pro hac vice*)
Alice Gyamfi (*admitted pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
kevin.walsh@us.dlapiper.com
alice.gyamfi@us.dlapiper.com
Tel: (212) 335-4571
Fax: (212) 335-4501

*Attorneys for Defendant Al Jazeera Media Network*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ........................................................................................................ 3

I. Plaintiff's Claims Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6)........................................ 3

II. No VPPA Violation Could Have Occurred as Plaintiff Consented to Al Jazeera's Data Sharing Policies for Disclosure of Video Viewing Information........................................ 4

A. Al Jazeera's Consent Mechanisms Satisfy § 2710(b)(2)(B)........................................ 5

i. Al Jazeera seeks consent when users first visit the Website or use the Apps................ 5

ii. Users necessarily consent when creating an account........................................ 6

iii. Users can withdraw or limit consent at any time........................................ 7

III. Plaintiff Fails to Allege that He Is a VPPA "Consumer" ........................................ 9

IV. Plaintiff Fails to Allege a Knowing Disclosure of "Personally Identifiable Information" within the Meaning of the VPPA........................................ 11

A. The "Google-Specific Identifiers" Do Not Identify Plaintiff ........................................ 13

B. The Amplitude-Related Identifiers Do Not Identify Plaintiff........................................ 14

C. Nothing Connects Google's or Amplitude's Alleged Capabilities with Plaintiff............ 16

D. The Information Disclosed Does Not Identify "Specific Video Materials" .................... 18

E. Plaintiff Has Not Alleged a "Knowing" Disclosure of His PII ........................................ 19

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17-cv-04570, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)........................................19

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ..........................................................................................13

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .......................................................................................11

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)...............................................................................11

*Goodman v. Main Springs*,
No. 14-12585-FDS, 2014 WL 5454220 (D. Mass. Oct. 27, 2014)..................................3, 10

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) ...............................................................................17

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) .............................................................................12

*Joseph v. IGN Entertainment*,
No. 24-cv-11579, 2025 WL 2597913 (D. Mass. July 10, 2025) .........................................10

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .........................................................................8, 9

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)...............................................................................18

*Mazzarino v. Massachusetts State Lottery Comm'n*,
616 F. Supp. 3d 118 (D. Mass. 2022) ................................................................................5

*MIT Fed. Credit Union v. Cordisco*,
470 F. Supp. 3d 81 (D. Mass. 2020) ..................................................................................3

*Monsarrat v. Newman*,
28 F.4th 314 (1st Cir. 2022)................................................................................................9

*In re Nickelodeon Consumer Priv. Litig.*,
MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014)..................................................12

*Nienaber v. Overlake*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....15

*Ocasio-Hernández v. Fortuño-Burset*,
640 F.3d 1 (1st Cir. 2011)....3

*Rancourt v. Meredith Corp.*,
No. 22-cv-10696, 2024 WL 381344 (D. Mass. Feb. 1, 2024)....10

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)....12, 13

*Ruiz Rivera v. Pfizer Pharm., LLC*,
521 F.3d 76 (1st Cir. 2008)....4

*Santoro v. Tower Health*,
No. 22-cv-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024)....17

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024)....9

*Schatz v. Republican State Leadership Comm.*,
669 F.3d 50 (1st Cir. 2012)....3, 4, 20

*Solmetex, LLC v. Apavia LLC*,
149 F. Supp. 3d 192 (D. Mass. 2016)....4

*Stevens v. TD Bank, N.A.*,
No. 24-cv-8311, 2025 WL 1779164 (D.N.J. June 27, 2025)....17

*Tawam v. Feld Ent., Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023)....10

*Washington v. Flixbus, Inc.*,
No. 3:25-cv-00212, 2025 WL 1592961 (S.D. Cal. June 5, 2025)....7, 9

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022)....16

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016)....9, 10, 12, 13

**Statutes**

18 U.S.C. § 2710(a) .... *passim*

18 U.S.C. § 2710(b) .... *passim*

**Other Authorities**

S. Rep. No. 100-599 ..... 2, 18

## INTRODUCTION

The Complaint fails to allege any cognizable violation of the VPPA.

First, Plaintiff consented to the disclosures he challenges. When creating his Al Jazeera account, he agreed to Al Jazeera's Privacy Policy and authorized disclosure of his personal information to "any third party providers of advertising, plugins or content used on our Sites or our Apps" for content personalization and advertising purposes. Plaintiff cannot accept those terms, enjoy the personalized experience that he expressly chose, and then recast the same disclosures as nonconsensual VPPA violations.

Second, Plaintiff is not a "consumer" under the VPPA. He did not exchange information or value to watch free videos on Al Jazeera's website, and as a website-only user of free, publicly available videos, he does not qualify as a VPPA "subscriber."

Third, Plaintiff does not plausibly allege a knowing or intentional disclosure of his personally identifiable information. The 41-page Complaint devotes 25 pages to purported Google and Amplitude disclosures, all apparently drawn from those companies' marketing literature, but musters only six paragraphs on Plaintiff's actual experience with the Al Jazeera website. Plaintiff alleges only that he created an account and watched videos on the website while logged into his Google account. He never alleges that he downloaded or used the Al Jazeera mobile apps that purportedly disclose users' information to Amplitude. His inability to do so renders all of the Amplitude-related allegations entirely irrelevant to his claim.

Fourth, the VPPA prohibits knowing disclosure of information that an ordinary person could use to determine a specific person viewed a specific video. Plaintiff does not plead that the alleged disclosures would identify him to an ordinary person. And he does not plead that Al Jazeera knowingly disclosed either his identity or any specific video he watched.

Unable to plead those facts, Plaintiff substitutes conjecture for substance, burying the absence of Plaintiff-specific allegations behind pages of hypertechnical discussion about how Google and Amplitude could hypothetically identify a user's viewing history. Plaintiff's Complaint must be dismissed because he consented to the disclosure of his personal information to enjoy a personalized experience and, independently, failed to allege other essential elements of a VPPA claim.

## BACKGROUND

The VPPA creates a civil remedy against a "video tape service provider" that "knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).[1] Plaintiff alleges that Al Jazeera Media Network ("Al Jazeera") disclosed his personally identifiable information ("PII") to Google and Amplitude for marketing, advertising, and content personalization. Compl. ¶ 61. He alleges that in December 2023, he created an Al Jazeera account while logged into his Google account and used the Al Jazeera Website (the "Website") while signed in and watching prerecorded videos. *Id.* ¶¶ 100–101. His Google account required him to provide his name, date of birth, and phone number; Al Jazeera did not. *Id.* ¶ 40. He does not allege that Al Jazeera required *any* information to watch videos on the Website. Nor, significantly, does he allege that he downloaded, installed, opened, or watched any videos on the Al Jazeera Android or iOS apps (the "Mobile Apps" or "Apps") used on mobile devices.

[1] Congress defined the terms narrowly. A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." "Personally identifiable information" "identifies a person as having requested or obtained specific video materials or services from a video tape service provider." A "video tape service provider" rents, sells, or delivers "prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a) "Similar audio visual materials" meant then-current physical "laser disks, open-reel movies, or CDI technology." S. Rep. No. 100-599, at 12.

Plaintiff's counsel allegedly conducted a "dynamic analysis" to determine what information the Website or Apps transmitted to third parties when an account user watched videos, *id.* ¶¶ 21–24, implying that this "dynamic analysis" was of Plaintiff's devices. It was not; Plaintiff's counsel appear to have documented their own interactions with the Website, on devices different from those used by Plaintiff. Plaintiff alleges that the Website sent Google the title and URL of videos requested by Al Jazeera users and "Google-specific identifiers"—Google Analytics, Google Signals, and Google Cookies—all tools allegedly usable by Google to connect an Al Jazeera user to a Google Account or profile. *Id.* ¶ 26.

Amplitude is software allegedly installed by Al Jazeera in its Apps to perform analytics functions. *Id.* ¶ 43. Plaintiff alleges that when "an Al Jazeera user" downloads or watches videos on the Apps, Al Jazeera discloses to Amplitude a user's email, device ID, user ID, IP address, and video-viewing data. *Id.* ¶¶ 43–47. But Plaintiff does not allege he ever downloaded or used the Apps, and thus cannot allege that his own identifying information was transmitted to Amplitude.

## ARGUMENT

### I. Plaintiff's Claims Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim that is actionable as a matter of law and "plausible on its face."[2] Testing the sufficiency of a plaintiff's allegations is a two-step inquiry.[3] First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," including statements that "offer legal conclusions couched as facts."[4] Second, the court should take the remaining non-conclusory, non-speculative facts as true and ask

---

2 *MIT Fed. Credit Union v. Cordisco*, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)).

3 *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7, 11–13 (1st Cir. 2011).

4 *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *Goodman v. Main Springs*, No. 14-12585-FDS, 2014 WL 5454220, at *2 (D. Mass. Oct. 27, 2014).

whether they "plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. Dismissal is warranted where the facts alleged do not "possess enough heft to show that plaintiff is entitled to relief."[5]

### II. No VPPA Violation Could Have Occurred as Plaintiff Consented to Al Jazeera's Data Sharing Policies for Disclosure of Video Viewing Information

Plaintiff consented to the disclosures he now challenges. The VPPA permits disclosure of PII when consumers give informed, written consent in a form distinct from other legal or financial obligations, either when disclosure is sought or in advance for no more than two years, with a clear and conspicuous ability to opt out. 18 U.S.C. § 2710(b)(2)(B).

The Al Jazeera Website, Apps, and policies—which Plaintiff repeatedly quotes—specify that Al Jazeera uses cookies and other tracking technologies to personalize users' experiences and discloses personal data to third parties for personalization and advertising. Compl. ¶ 93 n.102. The Court may consider Al Jazeera's Website, Apps, Cookie Policy, account screens, and opt-out screens because Plaintiff extensively cited, quoted, and placed them at the center of his pleading.[6] A "cookie policy" is a written notice explaining how a website uses cookies to remember a browser, analyze site use, distinguish among visitors, and support advertising or related functions.[7] Al Jazeera's Cookie Policy discloses that "processing your personal data in connection with cookies and for other purposes is governed by our Privacy Policy." The Court should take judicial notice of Al Jazeera's Privacy Policy, which is expressly referenced in the materials upon which Plaintiff relies.[8] Al Jazeera's Privacy Policy is posted prominently on Al Jazeera's public website, adjacent to and incorporated by the Cookie Policy that Plaintiff quotes extensively.

---

5 *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008).

6 *Solmetex, LLC v. Apavia LLC*, 149 F. Supp. 3d 192, 194 (D. Mass. 2016) (observing that courts evaluating motions to dismiss may "consider documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice" (internal quotation marks omitted)).

7 Compl. ¶ 37 n.25, citing GOOGLE PRIVACY & TERMS, HOW GOOGLE USES COOKIES, https://policies.google.com/technologies/cookies?hl=en-US.

8 Federal Rule of Evidence 201(c)(2) permits a court to take judicial notice "if a party requests it and the court is supplied with the necessary information." Courts routinely notice public website information whose authenticity

### A. Al Jazeera's Consent Mechanisms Satisfy § 2710(b)(2)(B)

#### i. Al Jazeera seeks consent when users first visit the Website or use the Apps

Al Jazeera notifies users of their consent rights in writing as soon as they visit the Website. A prominent cookie banner immediately pops up, disclosing Al Jazeera processes personal data for marketing and content personalization, and offers the choice to "Allow all" or "Reject all":




Users can also click "Your Privacy Rights" to learn how Al Jazeera uses cookies.

The Mobile Apps for Android and iOS use a similar approach. When a user first opens either App, a mandatory notice concerning Al Jazeera's use of cookies and its Privacy Policy is displayed over the home screen, as depicted below. The user cannot skip that notice and proceed directly to content; he or she must either "allow all" or click an alternative—either "cookie preferences" or "Do not sell," depending on the user's region:

is "not subject to reasonable dispute," including on motions to dismiss. *Mazzarino v. Massachusetts State Lottery Comm'n*, 616 F. Supp. 3d 118, 124–26 & n.4 (D. Mass. 2022) (taking judicial notice of website terms and conditions on a motion to dismiss).




### ii. Users necessarily consent when creating an account

Al Jazeera obtained Plaintiff's consent at account creation. A user who creates an Al Jazeera account must confirm: "You agree to the Terms and Conditions & Privacy Policy. Your activity will be used to personalize your experience with Al Jazeera products and ads":




The Terms and Conditions and Privacy Policy are hyperlinked on the screen, and the top right-hand side of the sign-up page informs users that signing up is "not a paywall" and that Al Jazeera is "free to join." A user cannot create an account without agreeing to the Terms and Conditions

and Privacy Policy. The "Sign up" button pictured on the account opening screen above is immediately disabled if a user unchecks the consent box. Plaintiff alleges that he created an Al Jazeera account. Compl. ¶ 100. He necessarily agreed to the Terms and Conditions and Privacy Policy—and Al Jazeera's records confirm that on February 27, 2026, he consented to the Terms and Conditions and Privacy Policy and declined personalized email updates from Al Jazeera.

Plaintiff thus broadly consented to Al Jazeera disclosing personal data to "any third party providers of advertising, plugins or content used on our Sites or our Apps," as the Privacy Policy provided, including Google and Amplitude. Al Jazeera, Privacy Policy, https://privacy.aljazeera.net/ (hereinafter "Privacy Policy"). Plaintiff also agreed Al Jazeera had the right to collect, process, and disclose data for personalized content and ads, including to "collect or obtain personal data . . . when you download, install, or use any of our Apps [and] when you visit our Sites." *Id.*[9] Plaintiff's consent is separate from any legal or financial obligation, as the VPPA requires. Neither the Privacy Policy nor the Cookie Policy imposes any obligation on users.

**iii. Users can withdraw or limit consent at any time**

Al Jazeera users have a continuing right to limit or withdraw consent, satisfying the VPPA's requirement that consumers retain the ability to opt out "in a clear and conspicuous manner." 18 U.S.C. § 2710(b)(2)(B). The Cookie Policy informs users they may "opt out of cookies" from specific companies or "refuse them altogether." The Privacy Policy allows users to withdraw consent and is highly protective of users, who have the "right to object to the Processing of your Relevant Personal Data by us or on our behalf," "may unsubscribe for free at any time," and have the right "not to provide your Personal Data to us." The consent disclosures in the

[9] *See also Washington v. Flixbus, Inc.*, No. 3:25-cv-00212, 2025 WL 1592961, at *1–6 (S.D. Cal. June 5, 2025) (concluding that consent to a similar privacy policy permitting Flixbus to "(i) collect, process, retain and use, and (ii) transfer to third parties, including. . . marketing partners" precluded a claim under the California privacy act).

Android and iOS Apps are as explicit: users may "Reject All" data sharing in Android or "Ask App Not to Track" in iOS, and review "Your Privacy Rights" through a dedicated link, as the Complaint shows. Compl. ¶ 55.

This transparent, multi-tiered consent structure is responsible behavior, not violative of the VPPA. In *Lakes v. Ubisoft, Inc.*, for instance, the court dismissed a materially similar VPPA claim with prejudice where Ubisoft used a three-part consent structure similar to Al Jazeera's: a cookie banner on the Ubisoft website notified users of data-sharing practices on their first visit; users affirmatively agreed to the privacy policy when creating an account; and users could withdraw consent through account or device settings at any time. 777 F. Supp. 3d 1047, 1058–60 (N.D. Cal. 2025). The *Lakes* court determined that these disclosures were "distinct and separate" from other legal or financial obligations; that consent was "written" and "informed" because plaintiffs agreed to the privacy policy through electronic means; and that the VPPA's two-year timing requirement was satisfied because consent was elicited with each user interaction, thereby satisfying the VPPA's consent provisions. *Id.* The court also rejected plaintiffs' argument that the VPPA requires granular disclosure of the specific data shared with a specific third party. *Id.* at 1055–57.

Like Ubisoft, Al Jazeera discloses its data practices on the first visit and again at account creation, and it allows users to limit or withdraw from data sharing. Al Jazeera also goes further by notifying Website users at account creation that their activity will be used to personalize their experience and giving Mobile App users easy, one-click options to "Reject All" data processing and "Ask App Not to Track" for advertising.[10] Further, the Privacy Policy expressly authorizes

[10] Plaintiff's contrary allegation that Al Jazeera does not honor a user's "do-not-track" selection is false, conclusory, and does not defeat dismissal. Compl. ¶ 55. Even a cursory review of his allegations reveals that Plaintiff—who did not use the Apps—pleads no specific facts showing that he selected these options, that any particular setting remained active after that selection, or that any specific information was disclosed notwithstanding that choice.

disclosure to "any third party providers of advertising, plugins or content used on our Sites or our Apps," so Plaintiff consented to broader disclosures than the ones held sufficient in *Lakes*.

The Court can and should adjudicate Plaintiff's consent to these disclosures at this stage. Plaintiff's explicit consent is conclusive because "the facts establishing the defense are clear from the face of the complaint as supplemented by matters fairly incorporated within it and matters susceptible to judicial notice."[11] The Complaint extensively incorporates the Cookie Policy, account-creation processes, and opt-out mechanisms. Although Plaintiff alleges he did not consent, Compl. ¶ 102, that conclusory allegation is contradicted by his allegation that he created an Al Jazeera account and therefore necessarily consented to the disclosure of his information to "any third party providers of advertising, plugins or content used on our Sites or our Apps." *See supra*.

Plaintiff's consent is dispositive. He alleges that he signed up for a personalized experience, apparently because customizing Al Jazeera's content to his own interests would benefit him. In doing so, he expressly agreed to the disclosure of his PII for advertising, marketing, and personalization. There was no improper VPPA disclosure.

### III. Plaintiff Fails to Allege that He Is a VPPA "Consumer"

A "consumer" is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiff does not allege that he rented or purchased anything from Al Jazeera, so his claim depends entirely on plausibly alleging that he was a "subscriber." He does not. A "subscriber" must do more than passively use a free website; he must "provide[] some consideration to use the app."[12] In other words, Plaintiff must allege a genuine

---

11 *Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022) (internal quotation marks omitted); *see also Flixbus*, 2025 WL 1592961, at *1–6 (dismissing action where Plaintiff consented to disclosure of his data for marketing and advertising); *Lakes*, 777 F. Supp. 3d at 1058–60 (same).

12 *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 30 (D. Mass. 2024) (citing *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016)).

exchange of value with Al Jazeera for video access. For example, in *Yershov v. Gannett Satellite Information Network, Inc.*, the First Circuit found Yershov to be a subscriber because he was required to provide his "Android ID and his mobile device's GPS location" to use the USA Today mobile app, so his access to that app "was not free of a commitment to provide consideration."[13] Plaintiff alleges no prerequisite to watch videos on Al Jazeera's Website.

Plaintiff alleges that he and the putative class are "subscriber[s]" because they "created Al Jazeera accounts with their personal information such as email address, and obtained video-related benefits that are not available to non-account users, and subsequently watched videos through those accounts on the Al Jazeera Website, iOS App, and/or Android App." Compl. ¶ 124. This conclusory, threadbare recitation is precisely the type of "legal conclusion[] couched as fact[]" courts disregard at the pleading stage.[14] The Complaint identifies no "video-related benefits" that Plaintiff received. Unlike *Joseph*, where the plaintiff provided his email address "in exchange for" defined benefits such as contest entry, free magazines, and message-board access, Plaintiff does not allege that Al Jazeera required any information to access videos.[15] Unlike *Rancourt*, where the plaintiff was "required to register for the App and to create an Allrecipes account" to access content, Plaintiff does not and cannot allege that creating an Al Jazeera account unlocked special videos unavailable to members of the public.[16]

[13] *Yershov*, 820 F.3d at 487–89; *see also Tawam v. Feld Ent., Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023) ("[N]ot everything that can conceivably be labeled a 'subscription' automatically triggers the protections of the VPPA.").

[14] *Goodman*, 2014 WL 5454220, at *2.

[15] *Joseph v. IGN Entertainment*, No. 24-cv-11579, 2025 WL 2597913, at *3 (D. Mass. July 10, 2025).

[16] *Rancourt v. Meredith Corp.*, No. 22-cv-10696, 2024 WL 381344, at *13 (D. Mass. Feb. 1, 2024).

Al Jazeera has no restricted content behind a paywall. The same free content is available to all Website visitors, with or without an account. The Court should follow multiple other courts that have concluded that users who view freely available content are not VPPA "subscribers."[17]

Plaintiff may argue that providing an email address to obtain content personalization transformed him from a free user to a "subscriber." But even if the Court were to conclude that this is enough—even though Plaintiff received no special access in return for his email address—it would lead back to Plaintiff's consent, *supra*. Content personalization is possible only because of the data processing that enables it. This is precisely why Al Jazeera requires users to consent to the Privacy Policy before enabling the personalization that they desire.

Plaintiff also cannot manufacture "consideration" by pointing the finger at Google. Plaintiff alleges that he accessed the Website while logged into Google—and thus through Google as an intermediary—and that, when creating his Google account, he provided his personal information to Google. He also alleges that when he created his Google account, he "had personalized ads turned on by default." Compl. ¶ 101. Any information he consensually provided to Google arose from entirely separate, voluntary transactions with an entity that is not a party to this proceeding.

## IV. Plaintiff Fails to Allege a Knowing Disclosure of "Personally Identifiable Information" within the Meaning of the VPPA

Plaintiff fails to plead that Al Jazeera knowingly disclosed his PII. The VPPA contains a specific definition of "PII": "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

---

[17] *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015) ("A person who downloads and uses a free mobile application on his smartphone to view freely available content, without more, is not a 'subscriber'"); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 162 (S.D.N.Y. 2023) (dismissing a VPPA claim where a newsletter "subscription" provided no "video viewing benefits beyond those accessible to any member of the public").

The alleged disclosure must readily identify an individual as having watched a specific video. A plaintiff must allege disclosure of: "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the identified person 'requested or obtained' that material."[18]

Not all information constitutes PII under the VPPA. For example, information that "might one day serve as the basis of personal identification after some effort on the part of the recipient" does not provide the "more tangible, immediate link" needed under the VPPA.[19] The First Circuit has recognized that "there is certainly a point at which the linkage of information to identity becomes too uncertain, or too dependent on too much yet-to-be-done, or unforeseeable detective work" to constitute PII, and it requires allegations that a defendant "disclosed information reasonably and foreseeably likely to reveal which . . . videos [a plaintiff] has obtained."[20]

Specifically, in *Yershov*, the defendant allegedly disclosed the "GPS coordinates of the device at the time the video was viewed," in addition to "certain identifiers associated with the user's device, such as its unique Android ID." *Id.* at 484. Envisioning a hypothetical scenario where the defendant disclosed "that a person viewed 146 videos on a single device at 2 sets of specified GPS coordinates," the Court concluded, "[g]iven how easy it is to locate a GPS coordinate on a street map, this disclosure would enable *most people* to identify what are likely the home and work address of the viewer." *Id.* at 486 (emphasis added). The Court also assumed that the specific entity to whom the defendant disclosed information would be able to "link the GPS address and device identifier information to a certain person . . . ." *Id.*[21]

---

18 *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).

19 *In re Nickelodeon Consumer Priv. Litig.*, MDL No. 2443, 2014 WL 3012873, at *11 (D.N.J. July 2, 2014); *see also Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) ("If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless.").

20 *Yershov*, 820 F.3d at 486.

21 Plaintiff will presumably analogize the Android ID in *Yershov* to the Google-related identifiers described in the Complaint—albeit not his own—attempting to minimize the relative importance of the GPS coordinates, not present here, to the *Yershov* court's decision. But in *Yershov*, the disclosed GPS coordinates were inherently

Consonant with the First Circuit's reference to "most people," subsequent decisions from other courts focus on whether alleged disclosures "readily permit an ordinary person to identify a particular individual as having watched certain videos,"[22] not what a sophisticated recipient might theoretically do with arcane information. According to those decisions, the disclosure must enable "[a]n unrelated third party equipped with the information purportedly disclosed by [the defendant], and nothing more, [to] identify [the plaintiff]."[23] Most of Plaintiff's allegations are impenetrable descriptions of Google and Amplitude functionality—identifiers, cookies, code snippets, and complicated identity-stitching techniques. These allegations cannot be understood by "most people" or an "ordinary person" to reveal that a particular person watched a particular video.

**A. The "Google-Specific Identifiers" Do Not Identify Plaintiff**

Plaintiff's Google theory fails for that reason. He alleges that Al Jazeera disclosed "Google-specific identifiers"—usable by tools such as Google Analytics, Cookies, and Signals to allow Google to tie a user's Website activity to his or her Google account. Compl. ¶ 26. But this inverts the analysis. Google-specific identifiers are created and interpreted *by Google* and stored on a user's device. Al Jazeera does not see them, much less disclose them. Classifying Google's deployment and use of its own identifiers as *Al Jazeera* disclosures defies logic. If Google can identify a user only because of information the user independently gave Google, then the capacity to identify is attributable to Google, not to Al Jazeera or any information that Al Jazeera discloses.

---

sufficient for "most people" to identify a user's home and work addresses. The recipient's specialized ability to link device identifiers to a person was an additional layer over an already-identifying disclosure. Here, the Google identifiers allegedly enabled by—not transmitted by—Al Jazeera are meaningless to everyone except Google. Any identification depends on Google's relationship with the user, which Al Jazeera did not create, does not control, and has no visibility into. In any case, unlike Ciric, the *Yershov* plaintiff did not "consent, agree, or otherwise permit [the defendant] to disclose any information about him to third parties," and unlike Al Jazeera, the *Yershov* defendant did not provide the plaintiff "with the opportunity to prevent such disclosures." *Id.* at 484.

22 *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (internal quotation marks omitted).

23 *Robinson*, 152 F. Supp. 3d at 184.

Plaintiff's allegations that Google Signals disclosed his identity are even weaker. Plaintiff alleges Al Jazeera uses Google Signals to pair users' identity with their video viewing data "as evidenced by the below screenshot of the Website's tracker settings." Compl. ¶ 31:

```
["map", "redactFieldGroup", "GOOGLE_SIGNALS", "disallowAllRegions", false, "disallowedRegions", ""]],
```

Though "GOOGLE_SIGNALS" appears in this text, there is plainly no information identifying any specific user—to say nothing of Plaintiff. This screenshot represents only that Google Signals is not configured to disallow any regions. Whether any Google Signals data is actually transmitted depends on the user's decision whether to opt out of cookies using the prominent cookie banner described *supra*. Plaintiff does not allege that he opted out of cookies or that any Google Signals related to him were transmitted despite having opted out.

Nor do the alleged Google Cookies reveal Plaintiff's identity. One such cookie, named "_Secure-3PSID",[24] allegedly contains an encrypted Google Account ID—not a name, email, phone number, or other information that could identify Plaintiff to an ordinary person. *Id.* ¶ 37. Another cookie, known as "DSID," allegedly identifies a signed-in Google user on non-Google sites. *Id.* ¶ 42. But Plaintiff's allegations merely describe how Google *might* recognize browser or account activity inside its own ecosystem. Google's proprietary use of its own cookies does not constitute an *Al Jazeera* disclosure permitting an ordinary person to identify a user.

**B. The Amplitude-Related Identifiers Do Not Identify Plaintiff**

Plaintiff's allegations that Al Jazeera disclosed his PII to Amplitude fail for an even more fundamental reason: Plaintiff does not allege he ever used the Mobile Apps through which Amplitude allegedly operates. As alleged, Amplitude is an analytics tool that can be embedded in

---

[24] Plaintiff identifies this cookie as "_Secure-3-PSID." The correct spelling is "_Secure-3PSID".

mobile apps to track and analyze user engagement. Plaintiff alleges that when a user—conspicuously, not himself—watches a video in the Apps, Al Jazeera discloses that user's user ID, device ID, and video viewing information to Amplitude. Compl. ¶¶ 43–44, 46, 83. But because Plaintiff only alleges he used the Al Jazeera Website, *id.* ¶ 100, and not the Apps, the dozen-plus pages of the Complaint purporting to explain how Al Jazeera uses Amplitude are irrelevant to his claims. As in *Nienaber v. Overlake*, where the court dismissed a complaint for failure to allege actual use of the website at issue, the Court should dismiss Plaintiff's Amplitude claims because he does not allege he ever used the Apps or that his own information was disclosed to Amplitude. 733 F. Supp. 3d 1072, 1083 (W.D. Wash. 2024).

The Complaint casts in glaring relief the gap between Plaintiff's experience and his claims about Amplitude. Only six paragraphs of the 41-page Complaint describe what Plaintiff actually did in accessing Al Jazeera content: he "created an Al Jazeera account," "began using the Al Jazeera Website" and "was logged into his Google account when he accessed the Al Jazeera Website." Compl. ¶¶ 100–101. The paragraphs about Amplitude disclosures are unrelated to Plaintiff. *Id.* ¶¶ 43–60. They purport to describe what happens when a hypothetical "Al Jazeera user"—not Plaintiff—views a video on the Apps. The Complaint's only mentions of Al Jazeera App usage relate to the purported class, covering anyone who "used the Website, iOS App, or Android App," and sweeping allegations that "Plaintiff and members of the Class" watched videos on "the Al Jazeera Website, iOS App, and/or Android App." *Id.* ¶¶ 115, 124–25.

There is no allegation that Amplitude's "identifiers" were used to identify Plaintiff. Plaintiff alleges that a device ID and Amplitude ID are each a "random alphanumeric string"

created by Amplitude. He does not allege that an Amplitude identifier was paired with his name, ID, or other data that would allow an ordinary person to connect the identifier to *him*.[25]

The Complaint's screenshots purporting to demonstrate disclosure to Amplitude appear to have been harvested by Plaintiff's lawyers from their own mobile devices, not Plaintiff's. In the screenshots of the iOS and Android App Transmissions on page 14 of the Complaint, the email allegedly disclosed is susanharrington10026@gmail.com, which belongs to Susan Harrington, an attorney with Lynch Fink Harrington & Gray in Boston, MA, who appears to be Bursor & Fisher's co-counsel or agent.[26] The second screenshot highlights a different email, "bwilliams197212@gmail.com," which belongs, perhaps, to another attorney—but surely not to Plaintiff Oliver Ciric. Plaintiff also alleges the user ID and device ID in the App screenshots on pages 14–16 of the Complaint are identical, but does not allege they are *his* user or device ID.

**C. Nothing Connects Google's or Amplitude's Alleged Capabilities with Plaintiff.**

Plaintiff does not connect the allegations about Google and Amplitude technology to himself. As to Google, Plaintiff alleges that "Google Analytics integrates with Google Ads so that clients, like Defendant, can '[s]ee [] Ads data'"; or so "clients, like Defendant, can apply[] Google's machine learning models" to analyze data. Compl. ¶¶ 68–69. As to Amplitude, Plaintiff alleges only that Amplitude has the "ability" to identify users, that PII and video-viewing data "may" be paired with other sources, and that "Amplitude clients like Defendant can" track user engagement for marketing. *Id.* ¶¶ 56–60. These allegations describe only what Google and Amplitude are theoretically capable of doing. There is no allegation that Google or Amplitude actually did any of those things with Plaintiff's information, or, more significantly, that Al Jazeera

---

25 *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022) (dismissing a VPPA claim where the complaint "contain[ed] no allegation as to what information was actually included on [plaintiff's] profile nor how that information could be used by a third party to identify [plaintiff].").

26 *See* Susan M. Harrington's firm profile, https://www.lfboston.com/attorneys/susan-m-harrington/.

used Google or Amplitude to do so. Courts facing such speculation have been unequivocal: "allegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."[27]

In *Stevens v. TD Bank, N.A.*, the court dismissed the action because while the complaint described the theoretical functionality of the technology in great detail, "it lack[ed] well-pleaded factual allegations connecting those disclosures to Plaintiff."[28] Stevens, a TD Bank customer, claimed he accessed his account through the bank's website while he was logged into Facebook and that TD Bank's website incorporated the Facebook "Pixel code" to collect his information and transmit it to Meta or Facebook. The Court found that Stevens's case could not "ride solely on the general or theoretical capabilities of the Pixel. The Pixel must have captured and disclosed *his* personal financial information to state a claim."[29] Plaintiff-specific allegations are "essential to convert a case like this from a law-school hypothetical to an actionable dispute."[30] Here, Plaintiff offers no facts connecting these tools to disclosure of his information.

Although the Court must assume the truth of allegations on a motion to dismiss, Plaintiff's allegations in these respects have no basis in reality. Al Jazeera does not use Amplitude for the purposes described in the Complaint. Any data that Al Jazeera routes "to Amplitude" is contained in a private, Al Jazeera datastore, and Amplitude is contractually prohibited from accessing or using that data for its own uses. Similarly, Al Jazeera enables Google Signals data only concerning users who have not rejected third-party performance cookies via the cookie banner, and even when a user has not rejected those cookies, Al Jazeera does not see or receive—much less disclose—Google-specific cookies such as the alleged _Secure-3PSID and DSID cookies.

---

27 *Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024).
28 No. 24-cv-8311, 2025 WL 1779164, at *3 (D.N.J. June 27, 2025).
29 *Id.* at *4.
30 *Santoro v. Tower Health*, No. 22-cv-4580, 2024 WL 1773371, at *1 (E.D. Pa. Apr. 24, 2024).

### D. The Information Disclosed Does Not Identify "Specific Video Materials"

Plaintiff also fails to plead that Al Jazeera disclosed "specific video materials" that he "requested or obtained." 18 U.S.C. § 2710(a)(3). The VPPA is not triggered by allegations that someone visited a website, or even a web page that includes a video. The disclosed information must link an identified person to the "specific" videos this person requested or obtained.[31] Plaintiff tries to clear this high bar by alleging that Al Jazeera uses Google Cookies to pair a signed-in Google user's identity with the user's Al Jazeera video-viewing information. Compl. ¶ 34.

The first cookie Plaintiff identifies is "_Secure-3PSID", which, he alleges, embeds an encrypted Google Account ID—which itself obscures a user's identity—but can allegedly link a user to video-viewing data. *Id.* ¶¶ 35, 37. To demonstrate this link, Plaintiff offers two screenshots:

| | |
|---|---|
| tag_exp | 0~115938466~115938469~117484252 |
| dt | Could Ukraine's drone expertise serve Gulf countries? |
| dl | https://www.aljazeera.com/video/inside-story/2026/3/28/could-ukraines-drone-expertise-serve-gulf-coun tries |
| sid | 1774884169 |
| sct | 1 |
| seg | 1 |
| _tu | AAg |
| en | page_view |

| Name | Value | Do... | Path | Expi... | Size | Htt... | Sec... | Sa... | Part... | Cro... | Prio... |
|---|---|---|---|---|---|---|---|---|---|---|---|
| __Secure-3PAPISID | 92-g5lak6xnXk4J-/AnFRopnmd0... | .go... | / | 202... | 51 | | ✓ | None | | | High |
| __Secure-3PSID | g.a0008Qi5IVk4uGtpOF1kTpx7_L... | .go... | / | 202... | 167 | ✓ | ✓ | None | | | High |
| __Secure-3PSIDCC | AKEyXzWqq2EZXZZ5WqiEuvnPu... | .go... | / | 202... | 88 | ✓ | ✓ | None | | | High |
| __Secure-3PSIDRTS | sidts-CjcBWhotCVCgW1AEHUHf... | .go... | / | 202... | 102 | ✓ | ✓ | None | | | High |
| __Secure-3PSIDTS | sidts-CjcBWhotCVCgW1AEHUHf... | .go... | / | 202... | 101 | ✓ | ✓ | None | | | High |
| NID | 530=JBV9u58LCWZ2JAOGpeXsR... | .go... | / | 202... | 750 | ✓ | ✓ | None | | | Me... |

Plaintiff does not allege that these screenshots depict his own browsing sessions or transmissions from his device. Nor does he identify any field, value, or property appearing in both screenshots that would tie them to the same transmission, session, or user. Neither the Court nor "most people" looking at these screenshots could identify who viewed the highlighted video, much less conclude that it was Plaintiff rather than Susan Harrington, "bwilliams197212," or someone else.

---

[31] *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284–85 (S.D.N.Y. 2023); S. Rep. No. 100-599, at 12 (VPPA not violated by disclosing "whether a person patronized a video tape service provider . . . on a particular date").

Plaintiff's allegation that Google's "DSID" cookie identified him fails for the same reason. He alleges that a DSID cookie can identify a signed-in Google user on a non-Google website[32] and that when a user accesses the Website, Google tracking technologies "compel" the user's browser to transmit a DSID cookie, Compl. ¶ 4, as supposedly evidenced by the following screenshot:

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DSID | AICoiYOID-qpgddYe... | .doubleclick.net | / | 2026... | 315 | ✓ | ✓ | None | | | Medi... |

While "DSID" appears on the far left, there is no user identification to be found, such as a name or user ID, nor any identification of any video-viewing information, such as a video title or URL. Nor does Plaintiff make any concrete allegation that a DSID cookie was ever used to identify *him* or pair *his* identity with *his* viewing information. He alleges only that "Google is able to pair" users' video-viewing information with their use of the Website. *Id.* ¶ 41.

**E. Plaintiff Has Not Alleged a "Knowing" Disclosure of His PII**

Finally, Plaintiff does not plausibly allege that Al Jazeera knowingly disclosed his PII. This element requires a "knowing" disclosure identifying a specific person as having watched a specific video.[33] Plaintiff must plead that Al Jazeera *knew* a third party would link information it already possessed with other information conveyed by Al Jazeera to identify a specific person who viewed a specific video. Plaintiff's claim dangles on a slender, conclusory allegation: "Defendant *intentionally* and *knowingly* discloses Al Jazeera Website, iOS App, and Android App users'

[32] According to Google, the DSID cookie is used to ensure that "the user's ads personalization setting is respected," meaning Google uses the cookie to determine whether a signed-in Google user should receive ads based on preferences the user has indicated to Google, not to link an identified person to specific video content. Compl. ¶ 42 n.32, citing GOOGLE PRIVACY & TERMS, HOW GOOGLE USES COOKIES, https://policies.google.com/technologies/cookies?hl=en-US.

[33] 18 U.S.C. § 2710(b)(1); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-cv-04570, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) ("If Barnes & Noble did not think it was conveying PII, then there could be no knowledge of the conveyance, regardless of whether it knew what Facebook might do with the information.").

personally identifiable information and video viewing information to Google and Amplitude." Compl. ¶ 91. That is a legal conclusion, not a factual allegation, and should not be credited.[34]

The Google-specific identifiers Plaintiff refers to are Google's technology, and completely dependent upon the information and permissions that users independently provide to Google—not to Al Jazeera. Plaintiff alleges, for example, that Google Signals only operates for "users who have signed in [to their Google account] . . . and who have turned on Ads Personalization." *Id.* ¶ 64. As to Google Cookies, Plaintiff alleges that Google—not Al Jazeera— "compel[s]" a user's browser to transmit the DSID cookie. *Id.* ¶ 41. Al Jazeera has no control over the information or permissions Plaintiff granted to Google as a condition of using Google's technology. Likewise, Plaintiff's apparent consent to Google's Privacy Policy is between him and Google and shows nothing about Al Jazeera's knowledge. That "Google may store or use some or all of the cookies or similar technologies in your browser, app, or device" is not Al Jazeera's affair.[35]

Plaintiff's theory that Al Jazeera made willful and knowing disclosures to Amplitude fails for a more fundamental reason: since he never used an Al Jazeera App, he cannot allege any disclosure—to say nothing of knowing disclosure—of his PII to Amplitude.

## CONCLUSION

For these reasons, Al Jazeera respectfully requests that the Court dismiss the Complaint. Plaintiff consented to Al Jazeera's use and disclosure of his data. He has not plausibly alleged that he is a "consumer" of Al Jazeera's Website or Apps or that Al Jazeera knowingly disclosed his PII to Google or Amplitude. Because these deficiencies are apparent on the face of the Complaint and cannot be cured by amendment, this Court should dismiss with prejudice.

---

[34] *See Schatz*, 669 F.3d at 55.

[35] Compl. ¶ 42 n.32, citing GOOGLE PRIVACY & TERMS, HOW GOOGLE USES COOKIES, https://policies.google.com/technologies/cookies?hl=en-US.

Dated: September 8, 2026

**DLA PIPER LLP (US)**

*/s/ Michael R. Walsh*
Eric Christofferson (BBO No. 654087)
Michael Walsh (BBO No. 683716)
33 Arch Street, 26th Floor
Boston, MA 02110
eric.christofferson@us.dlapiper.com
michael.walsh@us.dlapiper.com
Tel: (617) 406-6000
Fax: (617) 406-6100

Kevin Walsh (*admitted pro hac vice*)
Alice Gyamfi (*admitted pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
kevin.walsh@us.dlapiper.com
alice.gyamfi@us.dlapiper.com
Tel: (212) 335-4571
Fax: (212) 335-4501

*Attorneys for Defendant Al Jazeera Media Network*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 8, 2026.

*/s/ Michael R. Walsh*
Michael R. Walsh